So Ordered.

Dated: March 21, 2025



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Kemper C. Willcut, II,

    Debtor.

Case No. 22-24753-gmh

Chapter 7

Adam G. Brief, United States Trustee,

    Plaintiff,

v.

Kemper C. Willcut, II,

    Defendant.

Adv. Proc. No. 24-02051-gmh

**DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SETTING PRETRIAL HEARING**

Debtor Kemper C. Willcut, II filed a chapter 7 case on October 27, 2022. He received a chapter 7 discharge on April 10, 2023, and his case was closed on June 8,

2023. Case No. 22-24753, ECF Nos. 33 & 39.

The United States trustee subsequently persuaded the court to reopen the case to allow an investigation into whether there is a basis to revoke Willcut's discharge under §727(d).[1] After conducting that investigation, the United States trustee timely filed this adversary proceeding requesting revocation of the discharge.

Willcut moves for summary judgment. The United States trustee objects.

I

A

Federal Rule of Civil Procedure 56(a), which Federal Rule of Bankruptcy Procedure 7056 makes applicable in this proceeding, provides, "The court shall grant summary judgment if the movant shows that there is **no genuine dispute as to any material fact** and the movant is entitled to judgment as a matter of law" (emphasis added). A factual dispute is genuine "if the evidence is such that" it "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 & 250 (1986). A fact is material if a dispute about it "might affect the outcome of the suit under the governing law". *Id*. at 248. And a genuine dispute as to a material fact "properly can be resolved only by a finder of fact"; so, if there are any such disputes, then summary judgment must be denied because "there is the need for a trial". *Id*. at 250.

When determining whether there is a genuine dispute of material fact, the court must "construe the evidence in the light most favorable to the non-moving party . . . and give that party the benefit of genuine conflicts in the evidence and all reasonable, favorable inferences." *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014). When "conducting [that] review, [the court] 'may not make credibility determinations, weigh the evidence, or decide which interferences to draw from the facts; these are jobs for a

---

1. Unless otherwise noted, all statutory citations are to the Bankruptcy Code, title 11 of the United States Code.

factfinder.'" *Bishop v. Air Line Pilots Ass'n, Int'l*, 5 F.4th 684, 693 (7th Cir. 2021) (quoting *Johnson v. Rimmer*, 936 F.3d 695, 705–06 (7th Cir. 2019)).

To determine whether Willcut is entitled to summary judgment, the court must consider the elements of the United States trustee's claim for discharge revocation and determine whether there are any "disputes over facts that might affect the outcome" where "the evidence is such that a reasonable [factfinder] could [rule] for the nonmoving party", here, the United States trustee. *Anderson*, 477 U.S. at 248.

B

Section 727(d)(1) requires that the court revoke a debtor's chapter 7 discharge if the "discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of [the] discharge". These "requirements normally are read strictly in favor of the debtor, as revoking a discharge reinstates all debts and thus wholly deprives the debtor of the fresh start that Chapter 7 is intended to give him." *Tidwell v. Smith (In re Smith)*, 582 F.3d 767, 775 (7th Cir. 2009). The party requesting revocation has the burden to prove that §727(d)'s requirements are met by a preponderance of the evidence. *In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992); *Grochocinski v. Eckert (In re Eckert)*, 375 B.R. 474, 478 (Bankr. N.D. Ill. 2007), aff'd No. 07 C 6012, 2008 WL 4547224 (N.D. Ill. Apr. 2, 2008).

"The first [§727(d)(1)] element requires 'fraud in the procurement of discharge,' not just fraud toward a creditor. The fraud must [ ] be 'fraud in fact' meaning an intentional wrong." *Goldstein v. Zilberbrand (In re Zilberbrand)*, 602 B.R. 53, 57 (Bankr. N.D. Ill. 2019) (first quoting *Jones v. Nat'l Bank of Harrisburg (In re Jones)*, 71 B.R. 682, 684 (Bankr. S.D. Ill. 1987), then quoting *Eckert*, 375 B.R. at 479). The second §727(d)(1) element requires that the party requesting the revocation lacked knowledge of the fraud before the discharge was granted. See *Zedan v. Habash*, 529 F.3d 398, 405 (7th Cir. 2008) (quoting §727(d)(1)) ("The clear, unambiguous language of the statute requires that 'the requesting party . . . not know of the fraud until after the granting of the discharge.'").

Given these governing principles, the court must deny summary judgment unless Willcut establishes either that there is no genuine dispute of material fact regarding whether (i) he committed fraud to procure the discharge or (ii) the United States trustee knew of the fraud before the court granted the discharge. Construing the evidence and all reasonable inferences in the light most favorable to the United States trustee, Willcut has failed to make those showings. As a result, summary judgment will be denied.

II

The United States trustee asserts that after the court granted Willcut's chapter 7 discharge, he uncovered fraudulent statements and omissions that Willcut made during the bankruptcy case that justify revocation of his discharge under §727(d)(1).

A

1

The United States trustee relies principally on allegedly fraudulent statements relating to Willcut's relationship with Delicious Foods of Wisconsin, Inc. ("Delicious Foods"). Delicious Foods was the owner and operator of De-Lish-Us Popcorn, a chip and popcorn factory in Waupaca, Wisconsin. ECF No. 1-22, at ¶¶28–30; ECF No. 14, at ¶¶16–18. When Willcut filed his chapter 7 petition, he listed his occupation on schedule I as President of Delicious Foods. Case No. 22-24753, ECF No. 11, at 26 & 38. In his schedules and in testimony to the trustee, Willcut consistently averred that he did not have an ownership interest in Delicious Foods; he maintains that position in this adversary proceeding. See, e.g., ECF No. 32-2, at ¶¶2–5; Case No. 22-24753, ECF No. 11, at 38. Willcut has consistently stated that Andrew Chiligiris owned and owns Delicious Foods. *Id.* And before Willcut received his discharge, Chiligiris responded to an inquiry from the United States trustee about ownership of Delicious Foods by also stating that he was the sole owner of Delicious Foods. In further response to the inquiry, Chiligris sent the United States trustee documents purporting to confirm his sole ownership of

Delicious Foods, including a stock certificate dated July 29, 2019, stating that Chiligiris owned 100 shares Delicious Foods' stock and corporate filings showing that the company had issued only 100 shares. ECF No. 36 at 140:23–145:1; ECF No. 1-22, at ¶52; ECF Nos. 1-9 & 1-10; ECF No. 14, at ¶24.

When the United States trustee investigated further after the discharge was entered, he discovered information casting doubt on the veracity of these statements. Andrew Colden, the general manager of Delicious Foods, testified that in 2019, Delicious Foods' former owner introduced him to Willcut as the new owner of Delicious Foods and on the same day, the former owner announced to Delicious Foods' ten or so employees that Willcut was the new owner of the company. ECF No. 39-2, at 11:9-16; 12:15-19; 18:18-20:2. When asked whether Willcut made other representations that he owned Delicious Foods, Colden testified that Willcut "gave [Colden that] impression every single day for two and a half years." ECF No. 39-2 at 26:17-27:3. Willcut, according to Colden's testimony, had sole "authority to sign checks on behalf of" Delicious Foods, ECF No. 39-2 at 44:16-22, and "would use the business account and pull 20 grand out every single month for private use", without, as far as Colden was aware, needing anyone else's permission, including that of Chiligiris, whom Willcut described to Colden as his friend and business partner. ECF No. 39-2, at 22:3-11; 27:5-20; 44:16-22.

Scott Janssen, an accountant, testified by declaration that Delicious Popcorn & Distributors, Inc., Delicious Foods' predecessor, was a long-time client of his accounting firm. ECF No. 39-20, at ¶¶1-2. Janssen's sworn testimony is that he met Willcut in August 2019, when Willcut bought Delicious Foods. *Id.* at ¶3. Janssen avers that Willcut represented himself as Delicious Foods' owner. *Id.* at ¶¶4-5. Janssen further testified that he prepared a Report of Business Transfer that Willcut and Jeff Hollnbacher, the CEO of Delicious Popcorn & Distributors, Inc., signed on September 12, 2019, and that he is listed as the contact person on that report. ECF No. 39-20, at ¶6. That report lists

Willcut as the 100 percent owner of Delicious Foods—a sharp contradiction with Willcut's sworn statements in his bankruptcy case that he had *no* ownership interest in Delicious Foods. ECF No. 1-14. Janssen additionally states that a review of Delicious Foods' accounting records after Willcut acquired the business left him uncomfortable "with the presentation of the books" and that he "was not able to prepare [the company's] income tax returns", *id*. at ¶¶7-9, statements that a reasonable factfinder might take to support Colden's testimony that Willcut controlled the Delicious Foods' bank account and used it for his own ends, more akin to a sole owner than a corporate officer.

What is more, Delicious Foods, acting through Willcut, consistently reported in various government filings and business records that Willcut was its owner. For example, in applying for licenses to purchase vegetables in Wisconsin, a process Willcut oversaw, the company only listed Willcut, identified as its president, in response to a question asking for the identification of **all** officers, partners, trustees, managers, members *and owners*. ECF No. 39-2, at 45:8-48:22; see also ECF No. 39-12, at 23-25 & 29–31. In two earlier-filed license applications, Delicious Foods listed Willcut (as president) and Chiligiris (as secretary) as "all" of the corporation's "Officers, Partners, Trustees, Managers, Members, [and] Owners". ECF No. 39-12, at 10–12; 15–17. One may reasonably understand these responses—on applications bearing Willcut's signature—to support Colden's and Janssen's testimony that Willcut was an owner of Delicious Foods. Indeed, Willcut signed the license applications attesting that the "undersigned authorized person fully understands that if any statement contained in [the] certification is not true, complete, or accurate or is false or misleading, the applicant and the authorized person signing [the] application may be in violation of s. 126.63, Wis. Stat. and subject to the provisions of Subchapter VIII of Chapter 126, Wis. Stat." ECF No. 39-12, at 12, 17, 25, & 31.

Colden, Delicious Foods' manager, also testified that Willcut took large amounts

of money from Delicious Foods to use for personal expenses, amounts that the United States trustee argues greatly exceeded what Willcut disclosed during his bankruptcy case. See ECF No. 39-2, at 26:17-27:20; 68:15-69:7; 80:17-82:1; 93:9-15; ECF No. 39-13. According to Colden's post-discharge testimony, Willcut used Delicious Foods' bank account and credit card for personal expenses in a manner that supports a reasonable inference that Willcut did not accurately report his income and either was Delicious Foods' sole owner or had full and unfettered control of its bank account or both. ECF No. 39-2, at 16:16-17:25; 25:9-16; 27:5-28:3; 34:10-35:3; 40:2-41:14; 42:22-45:7; 50:12-53:24; 55:12-69:7; 80:13-82:1. Based on Colden's testimony about Willcut's use of Delicious Foods' bank account and Willcut's related statements to Colden, one might reasonably infer that Willcut had a pattern and practice of making personal use of Delicious Foods' accounts in order to conceal his financial affairs, potentially from his former spouse and the government—a pattern and practice of concealment that he may be found to have continued in the course of his bankruptcy case to obtain a discharge.

And the United States trustee asserts that it commissioned a forensic analysis of the Delicious Foods stock certificate that Chiligiris sent the United States trustee in 2023 purportedly to confirm Willcut's statements that he lacked any ownership interest in Delicious Foods. On its face, the certificate shows that Delicious Foods issued 100 shares of its stock to Chiligiris on July 29, 2019, the full number of shares authorized, according to a document that Chiligiris says are the company's articles of incorporation. ECF No. 32-3, at 26-27 & 29–30. The forensic analysis (which is presumed accurate for present purposes), suggests that Chiligiris sent the United States trustee "a scanned copy of a physical stock certificate" that had "[t]ext boxes [ ] added digitally" and where "[t]he signature was applied electronically using Adobe Acrobat on March 21, 2023." ECF No. 39-14, at 2. The analysis concludes that the image of the stock certificate that Chiligiris sent had an electronic signature added on the date he sent it to the United States trustee, not on July 29, 2019, the date the stock certificate was purportedly signed. *Id.*

Willcut and Chiligiris tell a different story; one consistent with Willcut's statements that he was never an owner of Delicious Foods. Chiligiris testified that he had an earlier plan to grant Willcut an ownership interest, but that plan was never executed. ECF No. 36, at 52:14-20; 53:6-12; 56:1-7. So, perhaps, the stock-certificate analysis and other evidence can be rebutted or will otherwise be insufficient to prove that Willcut fraudulently obtained a discharge by testifying falsely about his ownership of Delicious Foods and concealing an asset of his bankruptcy estate from the trustee and his creditors. But weighing evidence is a matter for trial, not summary judgment.

2

Willcut next argues that there can be no basis for revoking his discharge because, before the court granted the discharge, the United States trustee investigated most of the issues he now raises, including Willcut's relationship with Delicious Foods. Willcut contends in effect that, as a matter of law, the United States trustee knew of the alleged fraud before the discharge was granted; thus, he cannot prevail on a §727(d)(1) action.[2]

---

2. Willcut admits that there were two omissions in his bankruptcy disclosures, which he characterizes as "minor omissions", of which the United States trustee lacked knowledge or notice, though Willcut contends that the omissions "lack the materiality necessary to warrant a denial of discharge." ECF No. 35, at 1. These omissions are (1) Willcut's failure to disclose his ownership interest in The Popcorn Shop Carmel LLC, in his schedules and (2) his failure, under oath at the §341 meeting, to disclose to the trustee the transfer of 138 North Merchant Street, Decatur, Illinois, in lieu of foreclosure to Macon County Development Group, LLC, within ten years of the petition date. *Id.* at 4-6, 11-14.

As for Willcut's failure to disclose his ownership interest in The Popcorn Shop Carmel LLC, Willcut states that the LLC "was formed in 2016" and "was created in anticipation of . . . a new store location in Carmel, IN" but that location was never opened. Case No. 22-24753, ECF No. 44-1, at ¶12. Willcut asserts that the "LLC never held any assets, operated any business, or generated any income" and he thought that it "had ceased to exist sometime around 2017 . . . [after] it was clear" that the Carmel, Indiana location would not be opening. *Id.* But the United States trustee submitted a copy of a business entity report showing that the LLC, acting through Maggie Howley, made a filing with the Indiana Secretary of State on September 9, 2022, two months before the petition date, and listed Maggie Howley as President and Kemper Willcut as Vice President; Howley filed that document "subject to the penalties of perjury, that the statements contained [t]herein [we]re true". ECF No. 39-18, at 5-6. A reasonable factfinder could disregard

The remainder of Willcut's arguments can be fairly characterized as attempting to explain away the United States trustee's evidence of fraud, which mostly relates Willcut's claim to have not been an owner of Delicious Foods and his failure to accurately disclose the income he received from Delicious Foods. Willcut insists that he testified truthfully about his lack of ownership and about the extent to which he paid personal expenses from the Delicious Foods' account. And, Willcut argues, even if his withdrawals from Delicious Foods' account inflated his income beyond what he reported, he always cautioned that his 2021 and 2022 income amounts were just estimates. ECF No. 32-2, at ¶¶6–7.

Put differently, Willcut contends that he didn't commit fraud and, even if he did, the United States trustee should have known about it before the court granted his discharge. Maybe so. But Willcut's response doesn't show that no reasonable factfinder viewing the evidence in a manner favorable to the United States trustee could conclude otherwise—that Willcut *did* obtain his discharge through fraud of which the United States trustee was *not* aware until after the court granted that discharge. Again, Colden's testimony that Willcut said he owned Delicious Foods, Willcut's seemingly unrestrained personal use of that company's funds, and evidence that Willcut derived income from Delicious Foods in amounts that dwarfed what he reported to the United States trustee, are more than sufficient to create a triable question of fact about whether

---

Willcut's testimony and conclude that Willcut failed to disclose this entity, either to conceal a valuable asset or possibly to conceal his relationship with Maggie Howley, Del's Popcorn, or for some other reason. Therefore, at this stage, the court will not exclude the United States trustee's potential use of these statements, documents, and transactions to prove revocation of Willcut's discharge under §727(d)(1).

As for Willcut's failure to disclose the transfer of 138 North Merchant Street, Decatur in lieu of foreclosure to Macon County Development Group, LLC, within the ten years before the bankruptcy filing, the court will not now foreclose evidence of Willcut's failure to disclose this transfer. Given the need for a trial, the issue of whether the nondisclosure of that transfer is relevant and otherwise admissible to prove the §727(d)(1) revocation claim is a matter best left for consideration at future proceedings.

Willcut obtained his discharge through fraud. Janssen's testimony, the various corporate documents, and the stock certificate forensic analysis discussed above provide additional bases on which a reasonable factfinder might reach that same conclusion.

And a reasonable factfinder could conclude—contrary to Willcut's arguments—that the United States trustee did not know of the fraud before the discharge was entered. Indeed, while the record supports a reasonable inference that Willcut misrepresented his financial affairs, including concealing an ownership interest in Delicious Foods, it doesn't support a reasonable inference that the United States trustee *knew* about any such misrepresentations. Indeed, Willcut, who professes his innocence, doesn't make that argument. (But the United States trustee has not asked the court to grant partial summary judgment in his favor on this ground, so the court leaves the issue for resolution after trial. See Fed. R. Civ. P. 56(a) & (g).)

Willcut instead argues that the United States trustee could have pursued the recently obtained evidence before the court granted Willcut his discharge. Again, even if that's true, it's only relevant for present purposes if the *only* conclusion a reasonable factfinder could reach is that the United States trustee knew about Willcut's fraud before the court granted the discharge. And the evidence doesn't begin to make *that* showing. To the contrary: a reasonable factfinder could find that the United States trustee concluded his investigation of Willcut's relationship with Delicious Foods without discovering Willcut's false testimony about not being an owner of Delicious Foods (presumed for purposes of this discussion), based on (false) information supplied by Willcut and Chiligiris. If the factfinder concludes that Willcut and Chiligiris earlier misled the United States trustee—as the factfinder reasonably could on this record—there is no doubt that the factfinder could reasonably conclude that the United States trustee didn't know of the fraud at the time Willcut obtained his discharge.

Indeed, if the factfinder were to find that Willcut committed fraud in pursuit of

the discharge, it is difficult to conceive how the same factfinder (at least on this record) could also find that the United States trustee knew of Willcut's fraud before the court granted that discharge. A finding that Willcut fraudulent concealed his true financial affairs substantially (if not inescapably) supports a finding that the United States trustee lacked knowledge of the true nature of those affairs and of Willcut's concealment before the court granted the discharge.

These conclusions are sufficient to deny Willcut's request that the court enter summary judgment in his favor.

B

There are, however, additional disputes of fact that may further support the United States trustee's efforts to prove a §727(d)(1) discharge-revocation claim. The United States trustee alleges that he uncovered, in his post-discharge investigation, numerous other fraudulent statements and omissions that Willcut made during the bankruptcy case of which the United States trustee was previously unaware.

1

The United States trustee contends that his post-discharge investigation of Willcut revealed evidence of Willcut's continued involvement with Del's Popcorn, contrary to his pre-discharge representations. Willcut owned K II Properties, LLC, and Del's of Decatur, Inc., and he formed those businesses to "purchase[ ] the Del's Popcorn location at 142 Merchant St., Decatur, IL" in 2009. Case No. 22-24753, ECF No. 44-1, at ¶¶2–4. K II Properties owned the real estate and Del's of Decatur owned the business that Willcut operated at the real estate, Del's Popcorn Shop. ECF No. 39-3, at 35:23-36:5; 41:11-22. Willcut later purchased additional real estate for the business, but, according to Willcut, "[i]n 2015[ ] there was a fire that caused extensive damage to the business, including the premises at 142 and 138 Merchant St., and forced the business to shut down for quite some time." Case No. 22-24753, ECF No. 44-1, at ¶6. Willcut has consistently maintained that "the primary lender . . . foreclosed on the premises and

repossessed all of the business assets based on their . . . security interest" and that after the foreclosure proceeding, "the Del's location in Decatur reopened under new management, now run by one of the business'[s] former employees." *Id*. at ¶¶6 & 9. The former employee is Maggie Howley, Willcut's "good friend," and Willcut contends that Howley's company, Merchant Sweetgum, LLC, now operates the Del's Popcorn location in Decatur. ECF No. 32-2, at ¶9. Willcut has represented that he has "not had any involvement in this business since [he] lost it all to the bank" neither as "an owner or an employee, nor ha[s he] been compensated in any way from the business since the bank foreclosed." Case No. 22-24753, ECF No. 44-1, at ¶9; *see also* ECF No. 32-2, at ¶9, ECF No. 39-3, at 59:14-60:22; 63:16-64:16.

The United States trustee, however, contends that, contrary to Willcut's professed lack of involvement with Del's of Decatur, his pre- and post-petition actions indicate that he obtained a personal benefit from that business. According to the testimony of the General Counsel of International Monetary Systems, LTD (IMS), Willcut continued to use an IMS account in the name of Del's of Decatur, Inc., for his personal benefit, and the account was in that name well after Willcut stated that the business had been dissolved—from the time the account was opened (around 2010) until November 28, 2022, when the account name was changed from "Del's of Decatur, Inc." to "Merchant Sweetgum, LLC."[3] ECF No. 39-19, at ¶¶1–11, ECF No. 39-3, 68:17-69:21. IMS's general counsel testified that from the inception of the account until November 28, 2022—more than a month after Willcut filed his bankruptcy petition—Willcut "was the only named contact on the account, and Del's of Decatur, Inc. was the only listed legal name for the company." *Id*. at ¶11. Howley was named as a contact on the account for the first time on December 1, 2022, and was not listed as the "lead name

---

3.     IMS is a "member-based bartering group" that businesses can join as members to barter their goods or services with other members in the network. ECF No. 39-3, at 65:12-67:4.

on the account" until September 22, 2023 (more than seven months after the court granted Willcut a discharge). *Id*. at ¶¶12 & 14. As of December 6, 2024, testified IMS's general counsel, Willcut "remain[ed] a named contact and client of IMS though this account" and "remain[ed] authorized to make purchases through this account" making "a purchase . . . as recently as June 12, 2024." *Id.* at ¶¶15–17. IMS reports that the account had a balance of $15,838.46 as of November 30, 2022. *Id*. at ¶9. Willcut recently testified that Howley "took the account over" "years ago" and he denied calling IMS to change the name of the account to Merchant Sweetgum and to add Howley as a contact, stating that he and Howley were friends, and he used the account to book travel and other items that their families used together and to assist Howley in purchasing items through IMS. ECF No. 39-3, at 70:23-72:13; 75:4-76:10; 88:4-13; 89:7-90:19.

In addition to the evidence of Willcut's use of the Del's Popcorn account with IMS, Colden testified that Willcut used that account when Colden knew him, and Colden identified at least one charge on a Delicious Foods' bank account that appeared to be a transfer to Del's Popcorn's IMS account. ECF No. 39-2, at 33:7-19; 74:14-75:10. Colden also testified that Willcut directed Delicious Foods to provide products and services to Del's, and to transfer equipment to it, but Delicious Foods never received payment. ECF No. 39-2, at 30:3-32:1; 37:10-39:25. And contrary to statements made in his bankruptcy schedules and to the trustee, Willcut told Colden that he owned Del's, in Decatur, but maintained the business in Howley's name. ECF No. 39-2, at 22:3-11; 28:4-6; 30:3-33:1.

Willcut argues that none of this matters: Del's purchased products and supplies from Delicious Foods and paid for those items. ECF No. 39-3, at 62:18-63:15, 63:19-64:16; 154:22-155:1; 181:17-182:4. Still, there is at least some evidence that Willcut had a relationship with Del's Popcorn from which he benefitted financially through IMS and did not disclose that benefit or his use of the IMS account in his bankruptcy case. The evidence suggests that Willcut used Del's IMS account for his own benefit long after

Del's of Decatur was said to have been dissolved and may have covertly benefitted personally by his directing Delicious Foods to provide products, services, and equipment to Del's. That evidence may support a finding that Willcut mischaracterized his financial condition during his bankruptcy case. And a reasonable factfinder might rely on this evidence to conclude that Willcut derived an undisclosed financial benefit from his arrangement with Del's of Decatur that the United States trustee knew nothing about before the discharge. The United States trustee seemingly had no reason to question whether Willcut had an ongoing relationship with Del's of Decatur before he deposed Colden and subpoenaed records from IMS after the discharge.

2

The United States trustee also discovered two other bank accounts and a gift card account that Willcut held prepetition but did not disclose in his bankruptcy case—an account with his ex-wife at Busey Bank, a pre-paid debit card with Green Dot Bank, and gift cards purchased through RaiseRight, an organization that allows customers to purchase gift cards to benefit charities (in this case, a school attended by Willcut's children). See ECF No. 39-1, at ¶¶12-14, ECF Nos. 39-8, 39-9, & 39-21. Willcut argues that all of this is inconsequential: He forgot to remove his name from the Busey Bank account following his divorce, that Green Dot Bank is a pre-paid debit card that has not been shown to have had any value on the petition date, and that the RaiseRight gift cards were immediately used for purchases once procured and therefore held no value for the bankruptcy estate. ECF No. 46, at 9. Standing alone the failure to disclose these accounts would not allow a reasonable finding that Willcut obtained his discharge fraudulently, but a reasonable factfinder viewing the evidence in the manner most favorable to the United States trustee could conclude that these nondisclosures support a finding that Willcut intentionally failed to make full disclosures or show a scheme or practice on his part to obtain the discharge through fraud.

\* \* \*

All told, while the evidence the United States trustee marshals to support his discharge-revocation claim is far from overwhelming, there are genuine issues of material fact that require a trial to adjudicate whether Willcut fraudulently obtained his discharge.

III

IT IS THEREFORE ORDERED that the debtor-defendant's motion for summary judgment is DENIED.

The court will hold a pretrial conference on April 8, 2025, at 11:30 a.m. to set a schedule for trial. To appear by telephone, you must call the court conference line at 1-669-254-5252, and enter Meeting ID 161 2029 1132 and Passcode 600430 before the scheduled hearing time.

#####